Akande v. United States Marshal Service

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31ˢᵗ day of August, two thousand sixteen.

PRESENT:
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> > *Circuit Judges.*
> JED S. RAKOFF,[*]
> > *District Judge.*

_____

JASON SHOLA AKANDE,

> *Plaintiff-Appellant*,

> v.                                                              13-4629

United States Marshals Service, Director, GEOFFREY M. STONE, Assistatant United States Attorney, GRACE ANN WISNIEWSKI, Special Agent, ICE, WARDEN, Central Falls Detention Facility,

> *Defendants.*

_____

---

[*] Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

**FOR PLAINTIFF-APPELLANT:** Jason Shola Akande, pro se, Kale Akobo, Nigeria.

**FOR AMICUS CURIAE UNITED STATES:** Vanessa Roberts Avery, Sandra S. Glover, Assistant United States Attorneys, *for* Deirdre M. Daly, United States Attorney, District of Connecticut, New Haven, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Robert N. Chatigny, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the case is **REMANDED**.

Appellant Jason Shola Akande, proceeding pro se, appeals the district court's judgment dismissing his complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that in proceedings in forma pauperis "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." We hold that the *sua sponte* dismissal was premature because, given the factual and legal complexity of this case, Akande's pro se status, and the fact that he may be able to clarify his complaint to state a claim, Akande should have been granted an additional opportunity to amend. In explaining why we believe that Akande may be able to state a claim, we do not undertake to decide any of the issues presented by the complaint. But given our remaining questions, we cannot say that the district court appropriately dismissed the complaint.

Akande, a non-citizen who has been removed from the United States, brought this action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and claims that the defendants unlawfully prolonged his incarceration for a criminal conviction in violation of his rights under the Fifth and Eighth Amendments. Because Akande's Complaint was dismissed *sua sponte* prior to service of process on the defendants, no named defendant appeared in the district court proceedings, and, accordingly, there is no opposing party in the case. Nevertheless, at our request, the United States has filed a brief as amicus curiae in support of the judgment below. *See Boddie v. Alexander*, 356 F. App'x 438, 439 (2d Cir. 2009) (summary order).

We review *de novo* a district court's dismissal of a complaint for failure to state a claim, "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Akande's complaint alleges civil rights violations and he is pro se, we construe his complaint with particular generosity. *See Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003).

Akande alleges the following facts. On May 22, 2006, he was sentenced on a criminal charge in state court. On September 25, 2006, he was discharged from state

3

custody to federal pretrial custody, and eventually transferred to the Donald W. Wyatt Detention Center ("Wyatt"). On January 15, 2010, having been found guilty by a jury of federal crimes, Akande was sentenced to 41 months' imprisonment. By the date of sentencing, however, Akande had served more than 41 months in federal custody.[1] About a week after entry of judgment, Akande received a letter a from Bureau of Prisons Agent, defendant John Doe 2, stating that he had been held in federal custody for several months longer than his sentence. Copies of the letter were sent to Deputy U.S. Marshal John Doe 1 and Wyatt Inmate System Management Coordinator John Doe 3. On February 17 or 18, 2010, Akande was transferred from Wyatt to the physical custody of the Department of Homeland Security Immigration and Customs Enforcement ("ICE") at a detention facility in Boston, pending removal proceedings. Akande remained in ICE's custody until his deportation to Nigeria. Therefore, as the district court and the United States acknowledge, the relevant period of alleged unauthorized incarceration is, at most, 34 days, from January 15, 2010 to February 18, 2010.[2]

[1] The government and the court understood that Akande's sentence amounted to time served as of his sentencing. In a sentencing memorandum, the prosecutor wrote that "the defendant has been in federal custody since June 1, 2005. Thus, a sentence . . . of 'time served' would reflect a sentence of 55 months and 14 days of imprisonment." Gov't's Suppl. Sentencing Mem., D.Conn. 05-cr-136, Doc. 401, at 1, Jan. 14, 2010. At sentencing, the district court stated: "I sentence you to the custody of Bureau of Prisons for a period of 41 months. You will receive credit for time served, of course. With that in mind, you will soon be released from the custody of the Bureau of Prisons in connection with this case." Sentencing Tr. vol. II, 86, 05-cr-136, Doc. 421, Jan 15, 2010.

[2] Akande complains that he was incarcerated for 57 months, and that since he was sentenced to only 41 months, he was unlawfully detained for 16 months. His calculations appear to be based on a misunderstanding of what periods of incarceration count towards satisfaction of a criminal sentence. Much of the time Akande claims is based on time that he was detained pending trial for

4

The district court and the United States characterized Akande's claims as alleging merely a delay in transfer from federal prison to ICE detention. In their view, Akande can have suffered harm based only on *where* he was incarcerated, since his continued incarceration was inevitable. They conclude that his complaint must be dismissed, because Akande has failed to allege that the conditions of his confinement were severe enough to constitute a constitutional deprivation. It is not clear, however, that Akande did not plead – or cannot plausibly plead – a different claim, namely that he had a right to be released from federal prison when his federal sentence ended absent some indication (such as a warrant) that another agency had lawfully exercised its authority over him. Nor is it clear that the government and district court correctly assumed that Akande did not possess such a right. *See, e.g.* Gov't App. 99 ("[T]his case does not involve a sentenced prisoner's right to be released after serving a term of imprisonment in a Bureau of Prisons facility"); U.S. Amicus Br. 15 ("[T]his is not a case in which the Court is comparing confinement to release; the comparison here is between one type of confinement and another").

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*,

---

failure to satisfy conditions for his release. Order Setting Conditions of Release, D.Conn. 05-cr-136, Doc. 26**.** Additionally, Akande appears to mistakenly believe that he was entitled to "good time credits" before sentencing, Gov't App. 55. Since his pre-trial detention was lawful, even though it exceeded his ultimate sentence, he can at most claim that he was unjustly detained from the time he was sentenced. Both the district court and the United States have assumed, at least for present purposes, that Akande has sufficiently alleged that he spent 34 days in federal prison after he was sentenced and that that period was in excess of his sentence.

504 U.S. 71, 80 (1992). Although the precise contours of the relevant right have not been fully fleshed out, courts have recognized that, at the expiration of a sentenced prisoner's term, the legal authority to detain him under that sentence ends, and he is presumptively entitled to be released from prison. *See Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980) ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."); *see also Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) ("We have recognized a protected liberty interest in being free from wrongful, prolonged incarceration."). And whatever the contours of that right, it is possessed by all persons within our borders. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Courts have also addressed claims of unwarranted extensions of detention under the rubric of the Eighth Amendment. While the district court held that "[u]nder existing case law, depriving an inmate of physical liberty for this length of time after the completion of a prison sentence does not impose a harm of sufficient magnitude to violate the inmate's rights under the Eighth Amendment," Gov't App. 98, this is not a settled issue. *See*, *e.g.*, *Hankins v. Lowe*, 786 F.3d 603, 605 (7th Cir. 2015) (holding that conditions imposed by parole "were sufficiently onerous to constitute cruel and unusual punishment if prolonged beyond the parole expiration date" because "[a] lawless extension of custody is certainly unusual, and it is cruel in the sense of being imposed

6

without any legal authority"). We have held that a five-day delay in release of a prisoner entitled to liberty did not violate the Eighth Amendment. Calhoun v. New York State Div. of Parole Officers, 999 F.2d 647 (2d Cir. 1993). The Third Circuit has held that a nine-month delay in release did violate the Eighth Amendment. Sample v. Diecks, 885 F.2d 1099, 1108 (3d Cir. 1989). Akande's claim that he was held in federal prison for 34 days after the expiration of his criminal sentence falls somewhere between these two poles.

The limited facts alleged in the complaint, and those of which we can take judicial notice, do not indicate what legal authority, if any, justified Akande's continued detention between the expiration of his sentence and his arrest by immigration agents who took him to an immigration detention facility. When immigration officials plan to institute removal proceedings against a person in criminal custody who is either awaiting trial or serving a sentence, regulations provide that immigration officials send a "detainer" to the agency that has the person in custody to declare their interest in the prisoner. DHS regulations permit "[a]ny authorized immigration officer" to issue an "Immigration Detainer – Notice of Action" form "to any other Federal, State or Local law enforcement agency." 8 C.F.R. § 287.7(a). The regulation goes on to explain the purpose of such a detainer:

> A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

*Id*. The regulation further provides that the agency receiving such a detainer should

continue to hold the prisoner to facilitate the arrest of the alien by DHS, but only for a brief period of time:

> [The] agency [receiving such a detainer] shall maintain custody of the alien *for a period not to exceed 48 hours*, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.

8 C.F.R. § 287.7(d) (emphasis added).[3] Thus, by regulation, the immigration detainer would appear, at most, to justify an additional 48 hours of detention beyond the expiration of the prisoner's term.[4] The limited record before us, moreover, does not even reflect that a detainer was used in this case, and we cannot presume that ICE issued one. *Cf. Lora v. Shanahan*, 804 F.3d 601, 606 (2d Cir. 2015) (noting that defendant who pled guilty to criminal possession of cocaine with intent to sell was not detained by ICE despite being removable).

---

[3] Indeed, the face of the detainer instrument itself (as it existed at the time of Akande's detention) explicitly states that an alien can be detained "for a period not to exceed 48 hours (excluding Saturdays, Sundays, and Federal holidays)." Understanding Immigration Detainers, Appendix B DHS Form I-247 (April 1, 1997), *available at* http://www.ilrc.org/files/documents/pa_understanding_immigration_detainers_05-2011.pdf. Current DHS policies are even more restrictive, in that the agency has (1) eliminated the exception for Saturdays, Sundays, and holidays from the 48-hour window; (2) requires a recitation that probable cause has been found, or that an order of removal has already been entered and that the alien is an agency enforcement priority: and (3) requires the receiving agency to serve a copy on the prisoner. *See* U.S. Immigration and Customs Enforcement, About PEP [Priority Enforcement Policy], *available at* https://www.ice.gov/sites/default/files/documents/Fact%20sheet/2015/pep_brochure.pdf 1-2.

[4] We do not decide whether a prisoner otherwise eligible for immediate release may be lawfully detained for an additional 48 hours on the authority of a detainer alone; nor do we decide under what circumstances a belief that a prisoner is subject to removal proceedings would justify detention of that length or beyond.

We therefore cannot conclude with confidence that Akande cannot plausibly allege a viable cause of action.[5] Accordingly, given the complicated facts in this case, the unsettled nature of the case law, and Akande's pro se status, we remand to the district court with instructions that Akande be given one more opportunity to amend his complaint to better articulate the facts he alleges and the legal bases for his claims. *Cf.* Fed. R. Civ. P 15(a)(2) ("The court should freely give leave when justice so requires."); *Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (explaining that, even in cases concerning dismissals under § 1915(e)(2)(B)(ii), a pro se plaintiff should be afforded at least one opportunity to amend his complaint "unless the court can rule out any possibility, however unlikely it may be, that an amended complaint would succeed in stating a claim."). On remand, the district court should also consider whether it is desirable to make appointed counsel available to assist Akande in drafting an amended complaint.

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[5] Even if Akande can allege that he was detained unlawfully, establishing a claim for damages under *Bivens* will present other issues, including establishing individual culpability on the part of particular defendants, and confronting possible defenses including qualified immunity. We express no views regarding such issues, and leave them to the district court to resolve in the first instance, after Akande's claims are clarified.